# 14-3595-cv

## United States Court of Appeals

*for the*

## Second Circuit

KEVIN GRUPP, ROBERT MOLL*,*

*Plaintiffs-Appellants,*

UNITED STATES OF AMERICA, *ex rel.,*

*Plaintiff,*

— v. —

DHL WORLDWIDE EXPRESS, INCORPORATED, DHL EXPRESS
(USA), INC., DHL HOLDINGS (USA), INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

## BRIEF AND SPECIAL APPENDIX FOR PLAINTIFFS-APPELLANTS

DANIEL C. OLIVERIO
JOHN L. SINATRA, JR.
REETUPARNA DUTTA
HODGSON RUSS LLP
*Attorneys for Plaintiffs-Appellants*
140 Pearl Street, Suite 100
Buffalo, New York 14202
(716) 856-4000

# **TABLE OF CONTENTS**

**Page**

JURISDICTIONAL STATEMENT ........................................................1

ISSUES PRESENTED FOR REVIEW ...................................................1

STATEMENT OF THE CASE..............................................................2

STATEMENT OF FACTS ...................................................................5

SUMMARY OF ARGUMENT ............................................................10

ARGUMENT ...................................................................................10

A.   Standard of Review..................................................................10

B.   DHL's Contract Defense Fails. ................................................11

    1.   DHL's Documents Provide No Basis for Dismissal............12

    2.   This Court Already Rejected The Argument DHL Proffers Here. .....18

    3.   DHL's Own Statements Belie Its Proffered Interpretation.................18

    4.   DHL's Definition-By-Implication Fails.............................19

    5.   DHL's Ambiguity Argument Also Lacks Merit. ................21

C.   The First Amended Complaint Satisfies Rule 9(b). ....................27

D.   This Action is Timely. .............................................................28

CONCLUSION ................................................................................30

# <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**FEDERAL CASES**

*Allen v. Beta Constr.*,
    309 F. Supp. 2d 42 (D.D.C. 2004)....................................................................28

*Commercial Contr., Inc. v. United States*,
    154 F.3d 1357 (Fed. Cir. 1998) .......................................................................23

*DiFolco v. MSNBC Cable, L.L.C.*,
    622 F.3d 104 (2d Cir. 2010) .............................................................................19

*Dover v. British Airways, PLC*,
    No. 12 CV 5567, 2013 U.S. Dist. Lexis 160127 (E.D.N.Y., Nov. 8, 2013) ......14

*Gold v. Morrison-Knudsen Co.*,
    68 F.3d 1475 (2d Cir. 1995) .......................................................................26, 28

*Gross v. Rell*,
    695 F.3d 211 (2d Cir. 2012) .............................................................................11

*Lewellen v. Morley*,
    875 F.2d 118 (7th Cir. 1989) ............................................................................28

*Luce v. Edelstein*,
    802 F.2d 49 (2d Cir. 1986) ...............................................................................28

*Meijer, Inc. v. Ferring B.V.*,
    585 F.3d 677 (2d Cir. 2009) .......................................................................10, 26

*Minnesota Assoc. of Nurse Anesthetists v. Allina Health Sys. Corp.*,
    276 F.3d 1032 (8th Cir. 2002) .........................................................................23

*REA Express, Inc. v. Civil Aeronautics Bd.*,
    507 F.2d 42 (2d Cir. 1974) ...............................................................18, 24, 25

*Ronzani v. Sanofi, S.A.*,
    899 F.2d 195 (2d Cir. 1990) .............................................................................28

*Sayers v. Rochester Tel. Corp,*
   7 F.3d 1091 (2d Cir. 1993) .............................................................. 11

*Seiden Assocs., Inc. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir. 1992) .............................................................. 21

*United States ex rel. Butler v. Hughes Helicopters, Inc.*,
   71 F.3d 321 (9th Cir. 1995) .............................................................. 21

*United States ex rel. Cantekin v. University of Pittsburgh*,
   192 F.3d 402 (3d Cir. 1999) .............................................................. 25

*United States ex rel. Chilcott v. KBR, Inc.*,
   No. 09-cv-4018, 2013 U.S. Dist. Lexis 153331 (C.D. Ill., Oct. 24, 2013) ........ 24

*United States ex rel. Costa v. Baker & Taylor, Inc.*,
   No. C-95-1825, 1998 U.S. Dist. Lexis 23509 (N.D. Cal. Mar. 20, 1998) ......... 29

*United States ex rel. Ellis v. Sheikh*,
   583 F. Supp. 2d 434 (W.D.N.Y. 2008) .............................................. 28

*United States ex rel. Feldman v. Van Gorp*,
   674 F. Supp. 2d 475 (S.D.N.Y. 2009) ........................................... 4, 25

*United States ex rel. K & R Ltd. Partnership v. Massachusetts Housing
   Finance Agency*,
   530 F.3d 980 (D.C. Cir. 2008) .......................................................... 24

*United States ex rel. Oliver v. Parsons Co.*,
   195 F.3d 457 (9th Cir. 1999) .............................................................. 22

*United States ex rel. Parikh v. Premera Blue Cross*,
   No. CV01-0476, 2007 U.S. Dist. Lexis 24845 (W.D. Wash. Apr. 3, 2007) ...... 29

*United States ex rel. Taylor v. Gabelli*,
   345 F. Supp. 2d 313 (S.D.N.Y. 2004) .............................................. 21

*United States ex rel. Walker v. R&F Props. of Lake County, Inc.*,
   433 F.3d 1349 (11th Cir. 2005) ....................................................... 22

*United States v. DHL Express (USA), Inc.*,
   742 F.3d 51 (2d Cir. 2014) ...............................................................2, 30

*United States v. Kellogg Brown & Root Servs*.,
   No. 4:12-cv-4110-SLD, 2014 U.S. Dist. Lexis 43000 (C.D. Ill., March
   31, 2014) ...........................................................................................24

*United States v. Newport News Shipbuilding, Inc*.,
   276 F. Supp. 2d 539 (E.D. Va. 2003) .................................................23

*Virgilio v. City of New York*,
   407 F.3d 105 (2d Cir. 2005) .........................................................10, 11

STATE CASES

*State ex rel. Grupp v. DHL Express (USA), Inc*.,
   907 N.Y.S.2d 772 (Sup. Ct. Erie County 2010), *rev'd on other grounds*,
   922 N.Y.S.2d 888 (4th Dep't 2011), *aff'd on other grounds*, 19 N.Y.3d
   278 (2012) ..........................................................................................27

FEDERAL STATUTES

28 U.S.C. § 1291 ..........................................................................................1

28 U.S.C. § 1331 ..........................................................................................1

31 U.S.C. §§ 3729(a)(1)(A), 3730(b) .........................................................3

31 U.S.C. §§ 3729(a)(1)(A), (B)..............................................................3, 4

31 U.S.C. § 3729(b)(1)(A) .........................................................................25

31 U.S.C. § 3729(b)(1)(B) .........................................................................26

31 U.S.C. § 3730(b)(2)................................................................................29

31 U.S.C. §§ 3730(b)(4)(B), 3730(c)(3), and 3730(d)(1), (2) ...................4

31 U.S.C. §§ 3730(b) and 3732(a) ..............................................................1

31 U.S.C. § 3731(b) ...................................................................................28

-iv-

**RULES**

F.R.C.P. 3, 4(m) ..........................................................................29

Fed. R. App. P. 32(a)(5) ............................................................31

Fed. R. App. P. 32(a)(6) ............................................................31

Fed. R. App. P. 32(a)(7)(B) .......................................................31

Fed. R. App. P. 32(a)(7)(B)(iii) .................................................31

F.R.C.P. 9(b) ...........................................................26, 27, 28

F.R.C.P. 12(b)(6) ................................................................passim

F.R.C.P. 15(c)(1)(B) ..................................................................29

**OTHER AUTHORITIES**

Restatement (Second) of Contracts § 202(1) ...........................15

# JURISDICTIONAL STATEMENT

(A)  The District Court has subject matter jurisdiction of this False Claims Act case.  *See* 31 U.S.C. §§ 3730(b) and 3732(a); 28 U.S.C. § 1331.

(B)  This Court has jurisdiction under 28 U.S.C. § 1291.

(C)  The District Court's order of dismissal was entered September 11, 2014.  The resulting judgment was entered September 12, 2014.  The notice of appeal was filed and served on September 17, 2014.

(D)  This appeal is from a final order and judgment that disposed of all claims in the First Amended Complaint under Rule 12(b)(6).

# ISSUES PRESENTED FOR REVIEW

The District Court dismissed this False Claims Act ("FCA") case by erroneously holding that DHL's form contract was sufficiently ambiguous that DHL could not have possessed the intent required to violate the FCA.  This is wrong on the law and on the facts, especially in the context of Rule 12(b)(6).  The contract is not ambiguous.  Moreover, DHL's intent, which has been sufficiently alleged and is beyond plausible, cannot be adjudicated on a motion to dismiss.

In particular, DHL's contract reserves DHL's higher jet fuel surcharge for shipments that travel by air.  Shipments that travel solely by ground should receive DHL's diesel fuel surcharge.  The First Amended Complaint sufficiently alleges that DHL *knowingly* imposed its jet fuel surcharge on Government

shipments that DHL transported solely by ground, in violation of DHL's unambiguous contract.

## STATEMENT OF THE CASE

This FCA case has been to this Court once before — on the very same issue, namely, whether DHL's contract allowed this practice or is ambiguous such that DHL could not have had the intent required to violate the FCA.  On the first appeal, the parties briefed and argued this issue, and DHL spent the bulk of its time arguing for an affirmance based on it.  A-347-51.[1]  Had this Court agreed with DHL, it could have affirmed Judge Curtin's prior dismissal on this basis.  But this Court's vacatur did not address the issue, instead focusing on, and rejecting, DHL's 180-day notice argument.  *See United States v. DHL Express (USA), Inc.*, 742 F.3d 51 (2d Cir. 2014).

On remand, Judge Curtin again dismissed the case in error, this time ruling that DHL's contract was ambiguous (Decision, at 11), and that FCA liability was foreclosed because DHL's supposed "reasonable interpretation" made *scienter* implausible (*id*, at 12-14).  A-369-85; SPA-1-17.  It is time, now, for motion

---

[1]     Citations to "A-__" refer to the Appendix on this appeal; citations to SPA refer to the Special Appendix.

practice to conclude, discovery to commence, and this FCA case to be resolved properly.

This case is straightforward. Relators Kevin Grupp and Robert Moll, on behalf of the United States, seek to recover for improper *jet fuel* surcharges that DHL knowingly imposed on Government packages that DHL knowingly transported *solely by ground*. Specifically, DHL systematically and fraudulently charged the Government an extra fee based on the rising cost of *jet fuel* on shipments that traveled *solely by truck*. DHL knowingly overcharged the Government each time it wrongfully imposed this surcharge.

A company like DHL, engaged in business with the Government, is liable under the FCA if it knowingly presents, or causes to be presented, false or fraudulent claims for payment, or knowingly makes or uses false records or statements to get false claims paid or approved. *See* 31 U.S.C. §§ 3729(a)(1)(A), (B).[2] The "knowingly" scienter requirement covers any one of three mental states: "actual knowledge," "deliberate ignorance," or "reckless disregard." *Id.* §

---

[2] The FCA facilitates the recovery of damages from those who, like DHL, have defrauded the Federal Government. The FCA was enacted to combat overcharges by Government contractors, and it encourages relators to "blow the whistle" on "false or fraudulent" claims by bringing a qui tam lawsuit, like this one, on behalf of the Federal Government. *See* 31 U.S.C. §§ 3729(a)(1)(A), 3730(b).

3729(b)(1)(A).  Liability "require[s] no proof of specific intent to defraud."  *Id.* §

3729(b)(1)(B).  Here, the First Amended Complaint sufficiently alleges that DHL

knowingly overcharged the Government each time it imposed a jet fuel surcharge

on shipments it transported solely by ground.[3]

       DHL claims that its contract permitted this practice.  *But DHL never*

*told the Government — in its contract or otherwise — that it was charging for jet*

*fuel on deliveries by truck.*  Rather, DHL relies on a convoluted contractual

interpretation to link its jet fuel surcharge to its timing schedule for deliveries

rather than its mode of transport (*i.e.*, by airplane or truck).

       Nevertheless, the District Court (Curtin, J.) granted DHL's renewed

motion to dismiss on this faulty argument.  *See* 2014 U.S. Dist. LEXIS 128169

---

[3]    The Government chose not to intervene in this lawsuit, which permitted Grupp and Moll to continue this action, while keeping the Government apprised of its progress.

It bears noting that the Government's decision not to intervene has no significance to the merits.  *See, e.g.*, *United States ex rel. Feldman*, 697 F.3d 78, 84 (2d Cir. 2012).  The FCA anticipates this, and provides a higher share of recovery to successful relators who proceed alone, as is their right.  The statute also permits the Government to keep abreast of proceedings and *intervene later* for good cause.  *See* 31 U.S.C. §§ 3730(b)(4)(B), 3730(c)(3), and 3730(d)(1), (2); *see also* A-28.  In fact, many successful FCA cases are litigated this way every year.  *See, e.g.*, *Feldman*, 697 F.3d at 84.

-4-

(W.D.N.Y., Sept. 11, 2014); A-369-85; SPA-1-17.  Grupp and Moll timely appealed.

## <u>STATEMENT OF FACTS</u>

DHL is an international package delivery company.  A-39 (¶ 20).  Relators Kevin Grupp and Robert Moll own a delivery company that operated as a DHL independent contractor.  A-37 (¶ 9).  Grupp and Moll filed this FCA case because DHL falsely and fraudulently charged the Government jet fuel surcharges on Next Day and 2nd Day shipments that DHL transported solely by ground.  A-40-43 (¶¶ 24-38).  DHL knowingly and improperly did this.  A-42-45.  DHL does not deny it; rather, DHL contends it was permitted to do so.  But, according to DHL's own documents, DHL was obligated to charge only a lower *diesel fuel* surcharge for such shipments.

In particular, at the time, DHL offered several service levels akin to others in the industry, including "NEXT DAY 10:30 AM," "NEXT DAY 12:00 PM," "NEXT DAY 3:00 PM," "2ND DAY," and "GROUND."   A-40-42; A-286; A-287-88; A-291.  For each service level, DHL charged a different "base" amount (aside from any surcharge imposed).

Thus, not surprisingly, the Government paid a higher *base charge* for NEXT DAY 10:30 AM service than it would have for NEXT DAY 12:00 PM or

-5-

NEXT DAY 3:00 PM service, each of which was more expensive than 2ND DAY or GROUND. A-293; A-295; A-296; A-298. *For each service level, DHL charged a different "base" amount.* So when a Government employee wanted delivery by noon the next day, he or she selected NEXT DAY 12:00 PM, and the Government paid a greater "base" service charge than it would have if 2ND DAY or GROUND had been selected.

DHL's contract then permitted the Government to be charged a fuel surcharge — an additional sum based on the added fuel cost used by the applicable mode of transportation. A-40 (¶ 28); A-107-08; A-319. In particular, DHL was permitted to impose either a "jet fuel" surcharge for air *shipments*, or a lower "diesel fuel" surcharge for ground *shipments*. A-40 (¶ 26); A-44-45 (¶ 48); A-319 (stating that *jet fuel surcharge* applies to "Air Express **shipments**") (emphasis added). The fuel surcharge was added *on top of* the base charge, and DHL billed the total to the Government, which then paid DHL.

DHL had no basis to impose *jet fuel surcharges* on shipments that *never traveled by air*. The jet fuel surcharge was tied to the price of *jet fuel*. A-40-A-41 (¶¶ 28-29); A-107. DHL's *trucks* did not use *jet fuel*.

It is clear from DHL's documents that DHL was permitted to charge the higher *jet fuel* surcharge if a shipment traveled, in at least some portion of its

-6-

journey, *by air*.  If that shipment *only traveled by truck*, DHL's contract documents

required DHL to charge the lower *diesel* fuel surcharge, which, not surprisingly,

was tied to the cost of diesel fuel.  DHL trucks did use diesel fuel.

Despite these terms, DHL routinely and knowingly charged

Government agencies, such as the General Services Administration and the

Department of Homeland Security, a "jet fuel" surcharge for shipments that DHL

knowingly transported solely by ground, *despite the Government already paying a*

*premium for expedited service.*  A-40 (¶¶ 24-27); A-41 (¶ 32); A-42 (¶ 36).  In

doing so, DHL submitted, and caused to be submitted, false and fraudulent claims.

Grupp and Moll, who observed DHL's practices and moved DHL

shipments for years, allege that DHL *knowingly and improperly* charged jet fuel

surcharges on Government shipments that traveled only by ground, *i.e.*, that DHL

imposed the jet fuel surcharge on Government shipments "regardless of whether

the delivered items were ever transported by air."  A-36-37 ( ¶¶ 2, 9, 10); A-39 (¶

22); A-40-41 (¶ 29).  They allege that DHL was bound to limit "its jet fuel

surcharges to shipments that traveled, at least in part, by air transportation."  A-40

(¶ 26).[4]  They also allege that DHL stated its fuel surcharge to be an extra charge to adjust for *temporary higher fuel costs*.  A-40 (¶ 28).[5]

 Grupp and Moll allege that DHL's improper practices began in 2003 or 2004, when DHL built out its network of regional truck hubs.  A-40-41 (¶ 29); A-41 (¶ 34).  In this way, "DHL expanded its ability to transport shorter-distance packages, including Next Day and 2nd Day shipments, solely by ground, without the need for air trips through any DHL air hub."  A-41 (¶ 34).  They allege that the practice continued until just before DHL left the United States domestic business in January 2009 ("through at least 2008").  A-40-41 (¶¶ 29-32).

 Based on years of moving DHL shipments, Grupp and Moll allege that "[a] substantial percentage of DHL Next Day and 2nd Day shipments paid for by the United States Government *did not* travel by air at all, even though they included a jet fuel surcharge.  Instead, they were transported via DHL's truck hubs, or otherwise, using ground transportation."  A-37( ¶¶ 9, 10); A-41 (¶¶ 32, 33).

 Then in paragraph 35 of their First Amended Complaint, Grupp and Moll explain what they saw, with *examples* of DHL charging its jet fuel surcharge

---

[4] DHL's own submissions reflect this term.  *See* A-61; A-95; A-107.

[5] This, too, is supported by DHL's own prior submissions, although DHL's motion did not include the precise document that Grupp and Moll alleged in their First Amended Complaint.  *See* A-40 (¶ 28); A-107-08.

on shipments traveling solely by ground.  A-42.  For instance:  (1) a Next Day package from Buffalo to Cleveland that *did not travel by air*; instead, it traveled by truck from Buffalo to DHL's Erie, PA truck hub and, from there, by truck to Cleveland; and (2) a Next Day package from Washington, D.C. to Lorton, VA that *did not travel by air*; instead, it traveled by truck from Washington to DHL's Allentown truck hub and, from there, by truck to Virginia.  Moreover, based on their knowledge of DHL's billings and pricing, Grupp and Moll provided three *examples* where the Department of Homeland Security improperly incurred the higher jet fuel surcharge.  They even cite the numbered waybills.  A-42 (¶ 36).

Because only DHL and the Government know the exact number of at-issue shipments, Grupp and Moll allege that, based on their experience, "these DHL practices occurred on vast numbers of occasions from at least 2003 to 2008." A-42 (¶ 37).  As a result of DHL's improper jet fuel surcharges, they allege that the Government "paid DHL monies demanded through DHL's presentment of false claims" — claims that knowingly included jet fuel surcharges on shipments that DHL knowingly transported solely by ground.  A-44 (¶¶ 44-47).  To obtain these payments, DHL falsely and fraudulently represented that the jet fuel surcharge was properly incurred, even though the shipments never left the ground.  A-44-45 (¶ 48).  Thus, they allege, "[a]s a result of the knowingly false and fraudulent claims

-9-

submitted by DHL . . . the United States of America paid jet fuel surcharges where no air transportation was used." A-46 (¶ 54).

## SUMMARY OF ARGUMENT

DHL's contract is unambiguous. The contractual trigger for DHL's higher jet fuel surcharge is "air" transportation. Travel solely by ground, under the contract, triggers the diesel fuel surcharge.

And even *assuming* DHL's own contract is less than clear on this point, the question whether DHL had the scienter required for an FCA violation cannot be resolved on a 12(b)(6) motion to dismiss. On this record, DHL's *scienter* and FCA liability are sufficiently plausible to permit discovery to proceed on the merits — especially under this Court's lenient approach to scienter at the motion stage of a case. *See, e.g.*, *Meijer, Inc. v. Ferring B.V.*, 585 F.3d 677, 693 (2d Cir. 2009) ("We are, however, 'lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences,' because such issues are 'appropriate for resolution by the trier of fact'") (citations omitted). DHL's motion should have been denied. This Court should reverse.

## ARGUMENT

A.     Standard of Review

The issues on this appeal are subject to *de novo* review because they are legal issues arising from a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Virgilio*

-10-

*v. City of New York*, 407 F.3d 105, 111 (2d Cir. 2005). Factual allegations must be taken as true. *See id.* And all reasonable inferences must be drawn in favor of the relators. *See, e.g.*, *Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012). Whether a contract is ambiguous is also a legal question subject to *de novo* review. *See, e.g.*, *Sayers v. Rochester Tel. Corp*, 7 F.3d 1091, 1094 (2d Cir. 1993).

B.     DHL's Contract Defense Fails.

DHL's unambiguous contract permits DHL to impose a jet fuel surcharge if a shipment travels by "air." The contract requires the lower diesel fuel surcharge for shipments that DHL transports solely by ground transportation. This interpretation of DHL's contract is required under a plain reading of its terms, aided only by common sense.

DHL disagrees. But that does not mean that the contract becomes ambiguous. DHL also seems to believe that its contract was so ambiguous that it could charge whatever it liked and avoid the scienter required for FCA liability. DHL is wrong, and its arguments cannot succeed on a motion to dismiss.

DHL argued for dismissal by presenting an unworkable interpretation of its documents. DHL's argument that its contractual words either have no meaning, or a meaning directly at odds with common usage, is doomed whether on

-11-

a motion to dismiss, or at summary judgment, or at trial. DHL expects this Court to adopt unreasonable inferences based on portions of documents DHL designates.

DHL's defense fails. As set forth below, DHL's unambiguous contract provides no basis for a Rule 12(b)(6) dismissal because jet fuel surcharges are tethered to "air" transportation. In fact, this Court once ruled that the key term here, "Air Express," means *speedy delivery by air*. Moreover, DHL's statements about its services underscore DHL's deceptiveness. Finally, DHL cannot escape liability by arguing that its contract is ambiguous and, as such, it lacks the requisite scienter under the FCA. That issue must await factual development in discovery.[6]

1.   DHL's Documents Provide No Basis for Dismissal.

DHL's jet fuel surcharge is limited to "Air Express shipments." But DHL posits that this "Air Express shipments" term has nothing to do with *air travel*, and is, instead, *a category of DHL services* to which DHL can apply a *jet fuel* surcharge no matter how a package is transported. DHL contends that "Air

---

[6]   The District Court's discussion (A-378-79; SPA-10-11) of DHL's supposed need to know how a shipment will travel, before it travels, in order to assess the correct surcharge is a concept *not in the record*. And it is false: DHL knows how its packages will move *when they are first scanned*. Moreover, DHL did not invoice the Government until each shipment was *delivered* in any event. Thus, this argument is entitled to no weight at all.

-12-

Express shipments" *equals* "Next Day" and "2nd Day" service — whether by ground or by air.

DHL is wrong.  As a fundamental matter, DHL's *Air Express <u>Services</u>* interpretation has no support in DHL's documents.  *Such a "category" simply does not appear in any DHL document.*  In fact, in its brief to this Court on the first appeal, DHL admitted "that the term 'Air Express' is not explicitly identified as a class of services in DHL's rate guide …."  *See* DHL's Appellee Brf. 1/15/13, at 44, 46, 48 (Dkt. 52).  The indulgence should end here.

Significantly, DHL actually categorized its services into groups — such as DHL's three Next Day service levels.  *Air Express, or Air Express shipments, is never such a grouping.*  Rather, Air Express shipments is simply a term DHL used to describe when its jet fuel surcharge applies.  Thus, the only sensible conclusion, where the Government already pays more for DHL's higher service levels, is that the higher "Jet Fuel Surcharge" is reserved for shipments using airplanes.

DHL's documents permitted Government employees to select one of several separate and distinct levels of DHL services, namely:  "Next Day," "2nd Day," or "Ground."  DHL's documents then say that the "Jet Fuel Surcharge" applies to *"Air Express shipments"* A-95; A-107.  *"Air Express shipments" was*

-13-

*never a defined category of service available to the Government* — not in the Rate Guide, not in the waybill, and not in DHL's other documents.

Because it was not a defined term, the words "Air Express shipments" should be given their plain meaning:  Air Express is a *method of transport* — by "air."  Thus, DHL was permitted it to impose a "jet fuel" surcharge for *shipments* transported, in whole or in part, by air.  DHL, likewise, was permitted to impose a "diesel fuel" surcharge for those shipments transported solely by ground.

In particular, DHL's Standard Rate Guide states that "*Air Express shipments are assessed a fuel surcharge which is indexed to the USGC kerosene-type jet fuel index*," while "[g]round shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. of Energy's on-highway diesel fuel index" (emphasis added).  A-95.  This Rate Guide is consistent with DHL's indexed fuel surcharge document, where the "Air Express" surcharge table is entitled "2008 *Jet Fuel Surcharge Table*."  A-107 (emphasis added).

The words used have a plain meaning:  a "*Jet Fuel* Surcharge" applies to *jet fuel*.  A "Diesel Fuel Surcharge" applies to shipments that traveled by trucks, which use diesel fuel.  Each surcharge is tied to the method of transport.  There is no other rational interpretation.  *See generally Dover v. British Airways, PLC*, No. 12 CV 5567, 2013 U.S. Dist. Lexis 160127, at *16 (E.D.N.Y., Nov. 8, 2013)

-14-

("[t]he plain meaning of the term 'fuel surcharge' is a supplemental charge that is reasonably related to or based upon the cost or price of fuel"; it is an "added charge … in order to defray rising fuel costs").

Thus, DHL reserved for itself the right to impose two different fuel surcharges — one for jet fuel and the other for diesel fuel. Each surcharge was tied to its own publically-available index: jet fuel prices on one hand, and diesel fuel prices on the other. Each surcharge changed monthly. The jet fuel surcharge rose and fell with changes in the price of jet fuel, and diesel fuel surcharges with changes in the price of diesel fuel. Each surcharge, in name, application, and calculation, *was tied to the specific type of fuel, which was dependent on the method of transport*.

Moreover, the reason DHL imposed the surcharges was to "hedge" against volatile fuel prices. Thus, absent a jet fuel surcharge linked to the price of jet fuel, increases in the price of jet fuel would erode DHL's profits. The reason for DHL's imposition of surcharges has nothing to do with the time of delivery, but has everything to do with DHL's consumption of fuel — by airplanes or by trucks.

DHL's stated purpose for calculating its Air Express shipments surcharge using the price of jet fuel — to enable it to quickly track changes in fuel prices (A-107) — also undermines DHL's argument. *See* Restatement (Second) of

-15-

Contracts § 202(1) (the "principal purpose" of the parties is given "great weight" when interpreting a contract). It makes sense that rapidly changing jet fuel prices are reflected in the surcharges that DHL applies to shipments that travel by (jet) airplane. But changes in jet fuel prices have no impact on shipments traveling solely by truck. Changes in diesel fuel prices do.

In addition, in DHL's Indexed Fuel Surcharge document, DHL explains that "[t]hese surcharges" — plural — "are applicable to *all* DHL products, except for the following services: DHL Same Day, DHL Global Forwarding, DHL Global Mail and DHL Solutions" (emphasis added). A-107. Thus, *both* surcharges — jet fuel and diesel fuel — were potentially applicable to *all* Next Day and 2nd day shipments. If both surcharges can apply to Next Day shipments, then the diesel fuel surcharge must apply at times — namely, when no jet or jet fuel was used. Surcharges are tied to transport.

DHL's claim of a single, higher, fuel surcharge tied to all Next Day and 2nd Day shipments is directly refuted by its own documents and by common sense. If DHL's argument is credited, then it misled the Government by calling each a "fuel" surcharge, when it was, in fact, a "service surcharge." Of course, DHL *already* charged more for faster service. Its fuel surcharge, then, was unrelated to service levels. Instead, it was tied to the type of fuel used.

-16-

Just as DHL gave itself, in the waybill, the right to use any method of transportation, DHL *could have* written into its contract the ability to impose a fuel surcharge untethered to the type of fuel or the method of transport.  But DHL did not do this.  Instead, having promised that it would impose a surcharge based on "air" or "ground," DHL cannot now change that promise.

Here, the ordinary meaning of words, and the entirety of DHL's documents, mandate one result:  *Air* Express shipments means shipment by *airplane*.  If a shipment travels by airplane, the jet fuel surcharge applies.  Otherwise, it does not.  That DHL reserved its right to *transport* shipments how it chose does not translate into a right to apply surcharges fraudulently.  And that DHL's actual practices may have been easier for DHL than complying with the terms of its contract does not change the result.  *There is no contract ambiguity here*.

Certainly, the First Amended Complaint adequately alleges that DHL's practices were false and fraudulent, because DHL *knowingly charged* jet fuel surcharges on Next Day and 2nd Day shipments *that it knew* traveled solely by ground.  The First Amended Complaint sufficiently alleges that DHL violated the FCA and knowingly overcharged the Government.

-17-

2.      This Court Already Rejected The Argument DHL Proffers Here.

Decades ago, this Court considered the meaning of the term "Air Express" when a delivery company like DHL claimed its competitors were using the term "Air Express" unfairly. The Court determined that the term "Air Express . . . means simply the speedy delivery of goods by air and not any company's particularized kind of service." *REA Express, Inc. v. Civil Aeronautics Bd.*, 507 F.2d 42, 46 (2d Cir. 1974). The same is true in this case.

3.      DHL's Own Statements Belie Its Proffered Interpretation.

DHL's public statements are telling. In its "Timeline," printed from its website, DHL touts its history: "[w]ith this concept, a new industry was born: international air express service, the rapid delivery of documents and shipments by airplane." A-354. DHL itself told the world that *air express involves airplanes*.

Similarly, in its "Glossary," also from DHL's website, DHL explains that a *fuel surcharge*, also known as a bunker surcharge, is "[a]n extra surcharge by the carrier to adjust for temporary higher fuel costs." A-366; A-368.[7] Again, DHL ties its fuel surcharge to fuel costs. These documents further defeat DHL's

---

[7]     Unnumbered page 11 is a Word document copied and pasted from DHL's website to address cut-off printouts from the website.

arguments here.[8]  *And they directly bear on DHL's deceptiveness,[9] standing in contrast to what DHL actually did.*

    4.    <u>DHL's Definition-By-Implication Fails.</u>

In its brief on the first appeal, DHL admitted that its "Air Express Services" term is not "explicitly" defined.  *See* DHL's Appellee Brf. 1/15/13, at 44, 46, 48 (Dkt. 52).  Absent an express definition, DHL tries implication, relying on a passing reference to "Air Express services" contained in *one of two* Rate Guide descriptions of what *DHL Ground* offers.  A-64, 74.

But DHL cannot construct its definitional scheme by such a strained implication.  Nor can it do so by reference to a lone sentence located within its paperwork — in a place (the description of *DHL Ground*) that a *Next Day* or *2nd Day* customer would never have occasion to read.

---

[8]    These DHL documents are properly considered here.  The first bears on DHL's scienter and is implied throughout, and integral to, the First Amended Complaint, including at paragraph 58 (regarding DHL's implications).  A-47.  The second was directly referenced at paragraph 28 of the First Amended Complaint.  A-40.  This is a proper use of documents on a motion to dismiss.  *See, e.g.*, *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[9]    Discovery undoubtedly will yield additional documents like these.

Instead, if DHL meant for its Next Day customers to understand the term "Air Express" to mean a category of service levels, DHL would have used that term prominently. Or at least DHL would have used the term in the parts of its documents where DHL organized the service levels *supposedly* contained within "Air Express." *See* A-62; A-63; A-64; A-67; A-69-73; A-97, A-110. It did not.

Moreover, in this cited Rate Guide promise (A-64), where DHL says it provides its customer with "the same attention and careful handling that you value with our Air Express services, including tracking and delivery details," DHL is not defining *service categories*. Instead, DHL is referring to *customer service*.

*Most fatal* to DHL's attempted "implied" definition, however, is its internal inconsistency. In particular, when DHL discusses "DHL GROUND" *a second time* — ten pages later in the same document — DHL's description is materially different from the previous statement. In particular, in the second reference, DHL says that DHL GROUND provides "the same attention and careful handling that you value with our express services . . . ." A-74. This quote is materially different from the earlier one. *Compare* A-64 *with* A-74. It does *not* compare DHL Ground to DHL's "Air Express services." The word "Air" is removed. And the word "express" is no longer capitalized.

-20-

How can "Air Express" be *a term defined by implication* when that term is used inconsistently in two analogous parts of DHL's own Rate Guide? DHL's attempted definition of Air Express by implication fails. The Air Express term is *never* used to collect and describe DHL service levels. Instead, the term *Air* Express refers to a mode of transportation to which *jet* fuel surcharges apply.

5. <u>DHL's Ambiguity Argument Also Lacks Merit.</u>

DHL tries to sow confusion and create an ambiguity by implication, proffering a meaning different from that alleged in the First Amended Complaint. This it cannot do. *See, e.g.*, *Seiden Assocs., Inc. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir. 1992) (contract "is not made ambiguous simply because the parties urge different interpretations").

To be sure, this is not a case of DHL's "innocent mistake" or "mere negligence." *See United States ex rel. Taylor v. Gabelli*, 345 F. Supp. 2d 313, 330 (S.D.N.Y. 2004). Nor is it a case of innocent breach or misinterpretation of a contract. *See United States ex rel. Butler v. Hughes Helicopters, Inc.*, 71 F.3d 321, 329 (9th Cir. 1995). Rather, the First Amended Complaint alleges DHL's knowing submission of false claims: DHL knowingly imposed a *jet fuel* surcharge on shipments knowingly moved by *ground*. *This is an objective falsehood*. There is simply no provision that states DHL may do this.

-21-

Although the "reasonableness" of an interpretation may be relevant to whether an FCA defendant knowingly submitted a false claim, *see United States ex rel. Oliver v. Parsons Co.*, 195 F.3d 457, 464 (9th Cir. 1999) ("[a] contractor relying on a good faith interpretation of a regulation is not subject to liability, not because his or her interpretation was correct or 'reasonable' but because the good faith nature of his or her action forecloses the possibility that the scienter requirement is met"), it is not dispositive, particularly on a motion to dismiss.

If it was, an FCA defendant would be permitted to submit a false claim — knowing that it was false — but nevertheless avoid liability by claiming that its false claim was based upon a "reasonable interpretation" of the requirements. *That is not the law. See id.* at 463 n.3, 464 (denying summary judgment where the defendant claimed that it relied on its "reasonable interpretation" of the applicable regulations, but evidence showed that *the defendants acted purposely* to defraud the government).

This is why DHL's proposed rule that a supposed ambiguity gives it an automatic free pass is not the law. *See also United States ex rel. Walker v. R&F Props. of Lake County, Inc.*, 433 F.3d 1349, 1356-57 (11th Cir. 2005) (if regulations are unclear, court may look to evidence other than the regulation and form to determine whether a claim, allegedly submitted in violation of that

-22-

language, is false; district court erred by deciding, on summary judgment, that ambiguity in regulation necessarily foreclosed falsity of claims; evidence outside the regulation's language may be used to understand the meaning of that regulation).[10]

Instead, DHL's *state of mind* on contract meaning will be important. *See Commercial Contr., Inc. v. United States*, 154 F.3d 1357, 1366 (Fed. Cir. 1998) ("[i]f a contractor submits a claim based on a plausible but erroneous contract interpretation, the contractor will not be liable, absent some specific evidence of *knowledge that the claim is false* or of an intent to deceive") (emphasis added); *Minnesota Assoc. of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032 (8th Cir. 2002) (reversing summary judgment to defendants who had

---

[10]     *United States v. Newport News Shipbuilding, Inc.*, 276 F. Supp. 2d 539, 560-66 (E.D. Va. 2003), is similar. There, the court rejected a summary judgment argument that ambiguity in the regulation rendered it impossible for the defendant to have knowingly submitted false claims. Even though the regulation was subject to "agency and industry dispute and doubt," the plain language and legislative history of the regulation suggested that the defendant's interpretation was incorrect. With respect to the Government's argument that the defendant acted recklessly by charging costs based on a "tenuous interpretation" of the regulation without disclosing its interpretation, the court noted that "both the clarity of the regulation and the reasonableness of a contractor's interpretation are relevant in deciding whether a failure to disclose charging practices is indicative of a reckless disregard of their falsity." *Id.*

argued that regulations were "susceptible" to their interpretation; relator's evidence showed that the defendants certified compliance with regulation while knowing that the agency interpreted the regulation differently).

In fact, in *United States ex rel. K & R Ltd. Partnership v. Massachusetts Housing Finance Agency*, 530 F.3d 980 (D.C. Cir. 2008), the court expressly noted that the unreasonableness of a defendant's interpretation is "merely evidence, the absence of which does not preclude a finding of knowledge." (citation omitted); *see also United States v. Kellogg Brown & Root Servs.*, No. 4:12-cv-4110-SLD, 2014 U.S. Dist. Lexis 43000, at *23-*28 (C.D. Ill., March 31, 2014) (rejecting a "reasonable interpretation" argument on a motion to dismiss and distinguishing summary judgment cases; an objectively reasonable interpretation may be knowingly false); *United States ex rel. Chilcott v. KBR, Inc.*, No. 09-cv-4018, 2013 U.S. Dist. Lexis 153331, at *21-*28 (C.D. Ill., Oct. 24, 2013) (same and, on a motion to dismiss, drawing the reasonable inference that the relator's interpretation was the correct one).

Simply put, "[c]ontractors should not be permitted to escape liability for knowingly choosing [what may be] a 'reasonable,' but incorrect, interpretation of a contract or regulation." *See Chilcott*, 2013 U.S. Dist. Lexis 153331, at *31 (emphasis in original). Indeed, in this Court's *REA Express* decision, it determined

-24-

that the term "Air Express . . . means simply the speedy delivery of goods by air and not any company's particularized kind of service." *REA Express, Inc.,* 507 F.2d at 46. DHL's interpretation is objectively *unreasonable* in any event.

In this case, the issue of DHL's scienter is simply not one that can be adjudicated on a motion to dismiss. *See generally United States ex rel. Cantekin v. University of Pittsburgh*, 192 F.3d 402, 411 (3d Cir. 1999) (citation omitted) ("we must heed the basic rule that a defendant's state of mind typically should not be decided on summary judgment"). Indeed, a dispositive motion based upon a defendant's supposed lack of scienter is disfavored if interpretation issues are involved. *See, e.g.*, *United States ex rel. Feldman v. Van Gorp*, 674 F. Supp. 2d 475, 481 (S.D.N.Y. 2009) (denying summary judgment).[11]

---

[11] Significant, too, is paragraph 34 of the First Amended Complaint (A-41), which alleges that, in 2004, DHL expanded the use of truck (ground) hubs, which greatly increased its ability to transport shorter-distance packages solely by ground. DHL's at-issue contract language predates that then-new business model. In other words, in an earlier era, where all or nearly all DHL Next Day shipments *required* routing through an *air hub*, the issue in this case would not arise. As such, DHL's intent here, on outdated contract language, is at least "reckless disregard" or "deliberate ignorance." *See* 31 U.S.C. § 3729(b)(1)(A).

-25-

To be sure, scienter may be alleged generally. *See Gold v. Morrison-Knudsen Co.*, 68 F.3d 1475, 1477 (2d Cir. 1995); 31 U.S.C. § 3729(b)(1)(B) (liability requires no specific intent to defraud).

And this Court's stated policy of "leniency" on scienter issues at pre-trial stages such as on a Rule 12(b)(6) motion should be *dispositive* here. *See, e.g., Meijer, Inc. v. Ferring B.V.*, 585 F.3d 677, 693 (2d Cir. 2009) ("We are, however, 'lenient in allowing scienter issues to withstand summary judgment based on fairly tenuous inferences,' because such issues are 'appropriate for resolution by the trier of fact'") (citations omitted). Indeed, "Rule 9(b) requires only the *circumstances* of fraud to be stated with particularity; knowledge itself can be alleged generally." *Id.* at 695 (emphasis in original).

DHL's *intent* should be explored in discovery, where, for example, Relators expect (based on related litigation) to find clear DHL statements on contract meaning that undermine its proffered interpretation here. At this juncture, it is sufficient that the First Amended Complaint states a claim that DHL's practices are false and fraudulent:  DHL *knowingly* charged jet fuel surcharges on Next Day and 2nd Day shipments *that it knew* traveled solely by ground.  The First

Amended Complaint sufficiently alleges that DHL violated the FCA and knowingly overcharged the Government.[12]

The First Amended Complaint sufficiently alleges DHL's false and fraudulent conduct. DHL drafted its contractual terms. It should not now be heard to complain that they are ambiguous such that DHL gets a free pass — at the Rule 12(b)(6) stage — on FCA liability.

C.    The First Amended Complaint Satisfies Rule 9(b).

As set forth above, the First Amended Complaint ably satisfies Rule 9(b)'s particularity requirements. The letter and spirit of Rule 9(b) are met because Grupp and Moll have stated "with particularity the circumstances constituting fraud," and "[m]alice, intent, [and] knowledge . . . may be alleged generally." *See* Fed. R. Civ. Proc. 9(b). DHL has all the information it needs to answer these allegations, to investigate the matter, and to mount its defense.

---

[12]    On this very issue, it is noteworthy that, in prior New York State FCA litigation, the trial court (Curran, J.) rejected the very same contract argument that DHL proffers here, stating that "DHL's construction of the Contract, at least at this pre-discovery juncture, cannot be accepted because it would lead to an absurd or at least unsound result" (emphasis added). *See State ex rel. Grupp v. DHL Express (USA), Inc.*, 907 N.Y.S.2d 772, 782 (Sup. Ct. Erie County 2010), *rev'd on other grounds*, 922 N.Y.S.2d 888 (4th Dep't 2011), *aff'd on other grounds*, 19 N.Y.3d 278 (2012).

Can DHL really argue that it is unaware of its own contracts, or how it applied its fuel surcharges? DHL knows full well what this case is about. Its own motion papers prove it. DHL's Rule 9(b) argument should be rejected.[13] *See, e.g.*, *United States ex rel. Ellis v. Sheikh*, 583 F. Supp. 2d 434, 436-37 (W.D.N.Y. 2008); *Allen v. Beta Constr.*, 309 F. Supp. 2d 42, 46-47 (D.D.C. 2004); *Gold*, 68 F.3d at 1477 (Rule 9(b) requires, in an FCA case, "specific statements or conduct giving rise to the fraud claim") (emphasis added).

D.    This Action is Timely.

The FCA contains a *six-year* statute of limitations with a built-in discovery rule. *See* 31 U.S.C. § 3731(b). This action, which addresses DHL's false claims starting in 2003 or 2004 and running through 2008, was commenced in April 2008 — well within the FCA's limitations period. A-4; A-11. It is *commencement*, not service of the complaint, that satisfies the statute of limitations. *See, e.g.*, *Lewellen v. Morley*, 875 F.2d 118, 121 (7th Cir. 1989);

---

[13]    In the event greater particularity is needed, Grupp and Moll requested leave to amend to add whatever additional detail is known to the Relators, including the significant and probative detail learned in discovery in related litigation (including detail bearing on DHL's state of mind relative to its contract) — detail known as well to DHL. *See Ronzani v. Sanofi, S.A.*, 899 F.2d 195, 198-99 (2d Cir. 1990). Under these facts, justice would require no less. *See, e.g.*, *Luce v. Edelstein,* 802 F.2d 49, 56-57 (2d Cir. 1986) (Rule 9(b) dismissals are typically accompanied by leave to amend).

-28-

*United States ex rel. Parikh v. Premera Blue Cross*, No. CV01-0476, 2007 U.S. Dist. Lexis 24845, at *10 (W.D. Wash. Apr. 3, 2007) (in FCA context); *United States ex rel. Costa v. Baker & Taylor, Inc.*, No. C-95-1825, 1998 U.S. Dist. Lexis 23509, at *9-*10 (N.D. Cal. Mar. 20, 1998) (same); *see also* F.R.C.P. 3, 4(m).

This case was filed in 2008 *under seal*, as required by the FCA. *See* 31 U.S.C. § 3730(b)(2). It was kept under seal, pursuant to the FCA, until the District Court unsealed it and allowed Grupp and Moll to serve DHL.[14] A-4-6; A-25-48. Under the FCA's express provisions, any earlier notice to (or service upon) DHL *was forbidden*. Any provision of time, therefore, must be read in light of the FCA's seal requirements and six-year limitations period. All false claims made during the six years before the 2008 filing are, therefore, timely. *See Parikh*, 2007 U.S. Dist. Lexis 24845, at *10; *Costa*, 1998 U.S. Dist. Lexis 23509, at *9-*10.

Indeed, this Court, *in this very case*, has ruled that the FCA's seal provisions trump a contrary notice provision that would impede the FCA's seal

---

[14] There is no question that the 2011 First Amended Complaint, which is *substantially the same as the original complaint*, relates back to the original complaint under Rule 15(c)(1)(B). *See, e.g.*, *Costa*, 1998 U.S. Dist. Lexis 23509, at *9-10 (in FCA context). The question, in any event, is whether the 2008 filing date, or the 2011 service date, governs for statute of limitations purposes. Commencement is the law. Moreover, service was made at the earliest possible time under the FCA.

-29-

provisions and statute of limitations. *See United States v. DHL Express (USA), Inc.*, 742 F.3d 51, 54 (2d Cir. 2014). There is no viable statute of limitations defense in this case. The District Court agreed on this point, holding that DHL's argument had no merit. A-384; SPA-16.

## CONCLUSION

DHL believes there is nothing fraudulent about imposing a jet fuel surcharge on packages that never traveled by airplane. Common sense, and the law, say otherwise. On DHL's Rule 12(b)(6) motion to dismiss, all presumptions must favor the Relators and all doubts are to be resolved in their favor. DHL's motion should have been denied, so that this case may proceed to merits discovery — to enable the Government to recover for DHL's improper jet fuel surcharges. This Court should reverse.

Respectfully Submitted,
**HODGSON RUSS LLP**
By: s/John L. Sinatra, Jr.
Daniel C. Oliverio, Esq.
John L. Sinatra, Jr., Esq.
Reetuparna Dutta, Esq.
140 Pearl Street, Suite 100
Buffalo, New York 14202-4040
Telephone: (716) 856-4000
*Attorneys for Plaintiffs-Appellants Kevin Grupp and Robert Moll*

-30-

Certificate of Compliance With Rule 32(a) — Compliance with
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements.

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

    - √    this brief contains 6,934 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*
    - *N.A.*    this brief uses a monospaced typeface and contains [*number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    - √    this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 (v.14.0.6123.5001) in 14-point Times New Roman font, *or*
    - *N.A.*    this brief has been prepared in a monospaced typeface using [*name and version of word processing program*] with [*number of characters per inch and name of type style*].

Dated:     November 3, 2014

Respectfully Submitted,
**HODGSON RUSS LLP**
By: s/John L. Sinatra, Jr.
Daniel C. Oliverio, Esq.
John L. Sinatra, Jr., Esq.
Reetuparna Dutta, Esq.
140 Pearl Street, Suite 100
Buffalo, New York   14202-4040
Telephone:  (716) 856-4000
*Attorneys for Plaintiffs-Appellants*
*Kevin Grupp and Robert Moll*

-31-

# Special Appendix

**i**

**SPECIAL APPENDIX**
**TABLE OF CONTENTS**

**Page**

Decision and Order of the Honorable John T.
Curtin, dated September 10, 2014 and entered
September 11, 2014, Appealed From.....................   SPA-1

Judgment, dated September 12, 2014, Appealed
From......................................................................   SPA-17

SPA-1

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THE UNITED STATES OF AMERICA *ex rel.*
KEVIN GRUPP and ROBERT MOLL,

                                        Plaintiffs,

                -vs-                                          08-CV-301C

DHL EXPRESS (USA), INC.,
DHL WORLDWIDE EXPRESS, INC., and
DPWN HOLDINGS (USA), INC. (f/k/a
DHL HOLDINGS (USA), INC.)

                                        Defendants.
_____

APPEARANCES:              HODGSON RUSS LLP (DANIEL C. OLIVERIO,
                          ESQ., JOHN L. SINATRA, ESQ., and REETUPARNA
                          DUTTA, ESQ., OF COUNSEL), Buffalo, New York,
                          Attorneys for Plaintiffs.

                          CONNORS & VILARDO, LLP (TERRENCE M.
                          CONNORS, ESQ., LAWRENCE J. VILARDO, ESQ.,
                          and PAUL A. WOODARD, ESQ., OF COUNSEL),
                          Buffalo, New York, Attorneys for Defendants.


**BACKGROUND**

        This is a *qui tam* action brought by the relators on behalf of the United States for

alleged violations of the False Claims Act ("FCA"), 31 U.S.C. § 3729, *et seq.* Relators

assert that the defendants have violated the FCA by improperly billing the United States

for jet fuel surcharges on deliveries that traveled solely by ground transportation.

Specifically, relators allege that the defendants "falsely and fraudulently misrepresented

that certain Next Day and 2nd Day shipments were delivered by air such that jet fuel

surcharges were necessary, when, in fact, they were delivered solely by ground

SPA-2

transportation . . . ." (Item 25, ¶ 2).  Additionally, relators allege the defendants imposed diesel fuel surcharges on ground delivery shipments when "only a small portion of those surcharge amounts was passed along to DHL's independent contractor network of trucking companies who bought the relevant fuel."  *Id.,* ¶ 3.

The case was originally assigned to Chief United States District Judge William M. Skretny.  In a Notice of Election filed March 24, 2011, the Government declined to intervene in the action (Item 21).  On July 15, 2011, the relators filed a notice of their intention to proceed with the action in light of the Government's election not to intervene (Item 24) and additionally filed an amended complaint (Item 25).  On November 8, 2011, the defendants filed a motion to dismiss (Item 36), raising several grounds for dismissal.  Thereafter, on March 16, 2012, the case was transferred to the docket of the undersigned (Item 47).

In a Decision and Order filed September 14, 2012, this court granted the defendants' motion and dismissed the complaint (Item 50).  That decision was based solely on defendants' argument that the relators had failed to satisfy the statutory notice requirement imposed by 49 U.S.C. § 13710(a)(3)(B).  That statute requires a shipper, in a proceeding before the Surface Transportation Board, to contest a bill within 180 days of its receipt, as a precondition to suit.  Upon appeal to the Second Circuit, that court agreed with the relators that the 180-day rule did not apply in a *qui tam* action under the FCA.  The Court of Appeals vacated the judgement for defendants and remanded the matter to this court (Item 56).

As neither this court nor the Second Circuit addressed the defendants' remaining grounds for dismissal, this court issued an order directing the filing of additional

SPA-3

submissions in support of and opposition to the motion to dismiss (Items 60, 62-64). The court has determined that oral argument is unnecessary.  For the reasons that follow, the defendants' motion to dismiss is granted.

## FACTS

According to the amended complaint (Item 25, ¶ 20), defendants, collectively referred to as "DHL," are a shipping company that transports packages for a fee.[1]  DHL provided delivery services to the United States government, through the General Services Administration ("GSA"), the Department of Homeland Security, and the Department of Defense.  *Id.,* ¶ 25.  At all times relevant to the complaint, relators were the owners and operators of MVP Delivery and Logistics, Inc., ("MVP"), a trucking company located in Depew, New York, and an independent contractor to DHL.  *Id.*, ¶ 9. Relators allege that, beginning in or about 2003 or 2004, DHL began to assess a jet fuel surcharge on its "Next Day" and  "2nd Day" delivery service, regardless of whether the package traveled by air or ground.  *Id.,* ¶ 29.  Relators further allege that a "substantial percentage of DHL Next Day and 2d Day shipments paid for by the United States government *did not* travel by air at all, even though they included a jet fuel surcharge."  *Id.,* ¶ 32.  Additionally, beginning in 2003 or 2004, DHL began charging a diesel fuel surcharge notwithstanding the fact that it contracted out 65% to 70% of its ground delivery service.  *Id.,* ¶ 40.  Relators allege that DHL "shared only a small portion of fuel surcharges with its independent contractors."  *Id.,* ¶ 42.   At all times

---

[1]Defendant DHL Worldwide Express, Inc. no longer exists.  For purposes of the motion, all defendants are referred to collectively herein as "DHL."

3

SPA-4

relevant to the complaint, the jet fuel surcharge has been substantially higher than the ground fuel surcharge. *Id.,* ¶ 38.

Relators offered three specific examples of the alleged improper jet fuel surcharges. Waybill #61662929845 represents a March 2008 Next Day shipment from Washington, D.C. to Lorton, Virginia which traveled solely by ground transportation through DHL's truck hub in Allentown, Pennsylvania. Waybill #75371715440 represents a March 2008 Next Day shipment from Buffalo, New York to Cleveland, Ohio which traveled by ground transportation through DHL's truck hub in Erie, Pennsylvania. Waybill #65415662141 represents a February 2008 Next Day shipment from Alameda, California to Walnut Creek, California which traveled solely by ground transportation through DHL's truck hub in Fresno, California. Relators allege that in each of these instances, the government was improperly assessed a jet fuel surcharge (Item 25, ¶ 36).

In support of their motion to dismiss, defendants submitted DHL's 2008 "Standard Rate Guide" (Item 36, Exh. B), a copy of DHL's Ground Delivery Service Waybill (Item 36, Exh. C), DHL's 2008 Fuel Surcharge Tables (Item 36, Exh. D), and a copy of DHL's Next Day and 2nd Day Delivery Waybill (Item 36, Exh. E).

DHL's 2008 Rate Guide provides information regarding DHL's various shipping services (Item 36, Exh. B). On Page 2 of the Rate Guide, "U.S. Domestic Shipping" services are noted to include DHL Same Day, DHL Next Day: 10:30, 12:00 PM and 3:00 PM, DHL 2nd Day, DHL Ground, DHL Shipready, and DHL Smartmail. Each of the "Domestic Services" are further described on Page 4 of the Rate Guide. For example, "DHL Next Day 10:30 AM" is described as providing "[g]uaranteed delivery by 10:30

4

SPA-5

a.m. the next business day."  "DHL Ground" provides "[d]oor-to-door delivery throughout the U.S. . . . in 1-6 business days."  This method of shipment is said to offer "increased savings without decreased service features.  We guarantee your packages receive the same attention and careful handling that you value with our Air Express services, including tracking and delivery details."

        The Rate Table for DHL Ground delivery service on page 14 of the Rate Guide contains a description of DHL Ground service and a guarantee "that your packages receive the same attention and careful handling that you value with our express services, including tracking and delivery details."   On Page 35 of the Rate Guide, entitled "FEES," DHL advises its customers that "Air Express shipments are assessed a fuel surcharge which is indexed to the USGC kerosene-type jet fuel index.  Ground shipments are assessed a fuel surcharge which is indexed to the U.S. Dept. Of Energy's on-highway diesel fuel index."  Customers are directed to DHL's "Fuel Surcharge Table" for further details.

        On Page 37 of the Rate Guide, DHL domestic shipping services are categorized as either "Same Day," "Time Definite," or "Day Definite."  "DHL Ground," a "Day Definite" delivery service, is described as a way to "[s]ave money on your routine shipments with guaranteed door-to-door delivery in 1 to 6 business days, depending on the origin and destination of your shipment."

        DHL's fuel surcharge terms are described in a document entitled "DHL Express Fuel Surcharge Information" (Item 36, Exh. D).  According to this document, "DHL utilizes an indexed fuel surcharge based upon the fuel prices published monthly by the U.S. Department of Energy."  *Id.*  The "Air Express and International indexed surcharge

5

Case 14-3595, Document 33, 11/03/2014, 1360950, Page 45 of 56

calculation is linked to the monthly rounded average of the U.S. Gulf Coast (USGC)

price" for kerosene-type jet fuel, while the "Ground Delivery Service indexed surcharge

calculation is linked to the monthly rounded average" of the national price for diesel

fuel. *Id.*  There are two fuel surcharge tables, one for "DHL Air Express Services" and

the other for "DHL Ground Delivery Service."

DHL used distinct waybills for "Ground Delivery Service" and for "Next Day" and

"2nd Day" shipments.  Both waybills provided that DHL reserved the right to transport

packages by any means including air, road, or any other carrier (Item 36, Exhs. C, E).

### DISCUSSION

At the outset, the relators argue that in vacating the judgment and remanding the

case to this court, the Second Circuit impliedly rejected the defendants' alternative

arguments in support of their motion to dismiss.  On the contrary, the Second Circuit

explicitly stated that the judgment in favor of DHL was vacated "on the ground that the

180-day rule cannot apply to a *qui tam* action under the FCA."  *United States ex rel.*

*Grupp v. DHL Express (USA), Inc.,* 742 F.3d 51, 53 (2d Cir. 2014).  Accordingly, this

court will address the defendants' remaining arguments: (1) that relators have failed to

state a plausible claim for relief under the FCA, and (2) that the claims are partially

time-barred.

**1.  Motion to Dismiss for Failure to State a Plausible Claim for Relief**

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules

of Civil Procedure, a court should "draw all reasonable inferences in Plaintiff['s] favor,

SPA-7

assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber v. Metro. Life Ins. Co.,* 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  To state a claim for relief, "a plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' "  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Plaintiff must allege " 'enough facts to state a claim to relief that is plausible on its face.' "  *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 321 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When a plaintiff alleges fraud, the factual allegations must meet the higher pleading standard set forth in Rule 9(b) of the Federal Rules of Civil Procedure.  *See U.S. ex rel. Moore v. GlaxoSmithKline, LLC*, 2013 WL 6085125, *3 (E.D.N.Y. Oct. 18, 2013) ("The Second Circuit has held that the FCA is an 'anti-fraud statute,' and therefore claims brought under the FCA 'fall within the express scope of Rule 9(b)' of the Federal Rules of Civil Procedure.")  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed.R.Civ.P. 9(b).  To be fraudulent, a false statement must have been made with the requisite scienter, and thus the complaint must "plead the factual basis

7

SPA-8

which gives rise to a strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting *O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).  "In sum, to state a fraud claim, the plaintiff must make particular factual allegations supporting a reasonable inference that the defendants are liable for fraud, and allegations that strongly support an inference that the defendants acted with intent to defraud."  *Williams v. GMAC Mortg., Inc.,* 2014 WL 2560605, *3 (S.D.N.Y. June 6, 2014).  A court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008); *see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal,* 556 U.S. at 678)).

Additionally, In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  *DiFolco v. MSNBC Cable LLC,* 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint."  *Chambers v. Time Warner, Inc*., 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

8

SPA-9

The FCA imposes civil liability on any person who "knowingly presents, or causes to be presented, to [the United States government] a false or fraudulent claim for payment or approval" or "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government." 31 U.S.C. § 3729(a).  To plead a violation of the FCA, the plaintiff "must show that defendants (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *Mikes v. Straus*, 274 F.3d 687, 695 (2d Cir. 2001).  "Knowing" and "knowingly" are defined as meaning that the person (1) has actual knowledge of the information; (2) acts in deliberate ignorance of the truth or falsity of the information; or (3) acts in reckless disregard of the truth or falsity of the information.  31 U.S.C. §3729(b).  Here, the relators allege that DHL knowingly and falsely represented that Next Day and 2nd Day shipments were transported by air; that jet fuel surcharges were properly imposed on Next Day and 2nd Day shipments; and that diesel fuel surcharges were necessary to compensate DHL for ground shipments.  Item 25, ¶ 48.

Defendants did not falsely represent that all Next Day and 2nd Day shipments were transported by air.  The relevant waybills expressly advise DHL customers that DHL reserved the right to transport Next Day and 2nd Day packages by any means of transportation, not specifically by air.  Additionally, nowhere in the contract documents does DHL represent that diesel fuel surcharge amounts were necessary to compensate DHL and would be passed along to its independent contractor network of trucking companies.  The only possible misrepresentation relators have plausibly alleged is their claim that DHL fraudulently imposed jet fuel surcharges on Next Day and 2nd Day

9

SPA-10

shipments that did not travel by air.

Defendants argue that the contract documents clearly permit the imposition of jet fuel surcharges on the Next Day and 2nd Day shipments at issue, and thus relators have failed to allege a false claim.  The Rate Guide states that a jet fuel surcharge is imposed on all "Air Express" shipments.  Although "Air Express" is not explicitly defined, defendants argue that it refers to a category of service, not a mode of transportation, and thus impliedly includes Next Day and 2nd Day packages.[2]  Defendants argue that their computation of the fuel surcharges, as contemplated by the contract documents, is the only plausible interpretation in the business context in which customers want their packages delivered in a timely manner at a specific price, regardless of the method of transportation.  They contend that DHL must establish the cost of a shipment prior to its delivery and explicitly reserves the right to ship Next day and 2nd Day packages by any mode of transportation it deems appropriate.

Relators argue that, as the term "Air Express" is not explicitly defined in the Rate Guide, it refers to a mode of transportation, rather than a category of service.[3]  Consequently, they contend that jet fuel surcharges were only authorized on shipments transported by airplane.  Defendants counter that this reading of the contract

_____

[2]  The Second Circuit appears to have accepted as true the defendants' assertion that, although it is not explicitly set out in the Rate Guide, DHL Same Day, Next Day, and 2nd Day services are "Air Express" services, as distinguished from "DHL Ground" service.  *See United States ex rel. Grupp v. DHL Express (USA), Inc.,* 742 F.3d 51, 52 (2d Cir. 2014); Rate Guide, at p. 4.

[3]  Relators argue that the Second Circuit has already determined, in *REA Express, Inc. v. C.A.B.,* 507 F.2d 42 (2d Cir. 1974), that "Air Express" refers to a mode of transportation, not a category of service.  *REA* involved a decision by the Civil Aeronautics Board not to review a complaint of unfair competition regarding the name "Air Express."  The court affirmed the Board's determination that REA had failed to establish the reasonable likelihood that the unfair use of the term "Air Express" in that case caused specific and substantial public injury.  *REA* is neither relevant to nor determinative in the present case.

10

SPA-11

documents, which would require the computation of an appropriate fuel surcharge following the delivery of a package based on the mode of transportation, would create confusion and uncertainty and is simply impractical given the realties of the shipping industry.

In an unrelated case based on the same contract documents, this court determined that the term "Air Express" "can either denote a mode of transportation . . . or is used as a term of art to denote a category of services . . .."  *Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc.,* 2010 WL 1840316, *4 (W.D.N.Y. May 7, 2010).  As the contract ambiguity was not resolved through extrinsic evidence in the *Jim Ball* case, this court denied cross motions for partial summary judgment on liability.  *Id.*  Similarly, the court here is presented with a contract ambiguity and two competing interpretations of the provisions at issue.  The court must determine whether the allegation of a contract ambiguity, without more, is sufficient to allege a false claim under the FCA.

When alleging fraud, a plaintiff must "specifically plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth."  *Beth Israel Med. Ctr. v. Verizon Bus. Network Servs.*, 2013 WL 1385210, at *4 (S.D.N.Y. Mar. 18, 2013) (quoting *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987)).  Here, relators have alleged, in a conclusory fashion, that the imposition of jet fuel surcharges on Next Day and 2d Day shipments that were transported solely by ground transportation was fraudulent (Item 25, ¶48).  However, defendant's method of rate computation is both

11

SPA-12

consistent with the contract documents and reasonable in the business context.  The relators' conclusory allegation of fraud, based solely on a disputed interpretation of the contract documents, is insufficient to "strongly support an inference that the defendants acted with intent to defraud."  *Williams v. GMAC Mortg., Inc.,* 2014 WL 2560605, at *3; *see also Dash v. Seagate Technology (U.S.) Holdings, Inc.,* 2014 WL 2922658, *4 (E.D.N.Y. June 30, 2014) (conclusory statement as to defendant's fraudulent intent not sufficient to survive motion to dismiss); *Scheiner v. Wallace*, 832 F. Supp. 687, 702 (S.D.N.Y. 1993) ("Facts that are merely as consistent with fraudulent intent as they are with its absence are insufficient. Plaintiffs must allege facts that unambiguously give rise to a strong inference of fraudulent intent.").  Moreover, a conclusory allegation of conduct that is merely " 'consistent with' liability, fail[s] to satisfy both Rule 9(b) and *Twombly's* instruction that a plausible complaint 'nudge [ ] [plaintiff's] claims across the line from conceivable to plausible . . ..' "  *United States ex rel Corporate Compliance Assocs. v. New York Soc. for the Relief of the Ruptured and Crippled,* 2014 WL 3905742, *17 (S.D.N.Y. Aug. 7, 2014) (citing *Twombly,* 550 U.S. at 570).

Many courts have determined, in the summary judgment context, that "[w]ithout more than a relator's subjective interpretation of an imprecise contractual provision, a defendant's reasonable interpretation of its legal obligation precludes a finding that the defendant had knowledge of its falsity."  *U.S. ex rel. Thomas v. Siemens AG,* 991 F. Supp. 2d 540, 568 (E.D. Pa. 2014); *see also U.S. Dep't of Transp. ex rel. Arnold v. CMC Engineering,* 2014 WL 2442945, *3 (3rd Cir. June 2, 2014) (as a result of contract ambiguity, court found no evidence from which a reasonable jury could find that

SPA-13

defendant "knowingly" made a factually false claim or false certification as defined under the FCA); *cf. U.S. ex rel. K & R Ltd. P'ship v. Mass. Hous. Fin. Agency*, 530 F.3d 980, 984 (D.C.Cir. 2008) (holding that, where relator and defendant "simply disagree about how to interpret ambiguous contract language" and relator could not point to anything that might have dissuaded defendant from its interpretation, "there is no genuine issue as to whether [the defendant] knowingly presented false claims"); *United States v. Basin Elec. Power Coop.*, 248 F.3d 781, 805 (8th Cir. 2001) (holding relator had failed to state a claim under the FCA where the defendant's "interpretation and performance under the contract was reasonable" and the relator thus "did not prove that [the defendant] acted with the requisite knowledge"); *United States ex rel. Lamers v. City of Green Bay,* 168 F.3d 1013, 1018 (7th Cir. 1999) ("[I]mprecise statements or differences in interpretation growing out of a disputed legal question are similarly not false under the FCA."); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1477 (9th Cir. 1996).  Similarly, upon a motion to amend the complaint to add a claim under the FCA, the Fourth Circuit found proposed FCA claims involving general and vague contract provisions did not constitute false statements under the FCA.

> While the phrase "false or fraudulent claim" in the False Claims Act should be construed broadly, it just as surely cannot be construed to include a run-of-the-mill breach of contract action that is devoid of any objective falsehood.  An FCA relator cannot base a fraud claim on nothing more than his own interpretation of an imprecise contractual provision.  To hold otherwise would render meaningless the fundamental distinction between actions for fraud and breach of contract.

*U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.,* 525 F.3d 370, 378 (4th Cir. 2008) (internal citations and quotes omitted).  Here, a commonsense reading of the pertinent

SPA-14

documents -  the Rate Guide, waybills, and Fuel Surcharge Tables - would apprise DHL customers that jet fuel surcharges would be imposed on "Air Express" shipments, which include Next Day and 2nd Day shipments.  Relators' alternate interpretation of the documents falls far short of the FCA's requirement that the relator allege the "factual basis which gives rise to a strong inference of fraudulent intent."  *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir. 1994); *see also U.S. ex rel. K & R Ltd. P'ship*, 530 F.3d at 984 (parties' disagreement "about how to interpret ambiguous contract language" does not give rise to factual issue that defendant knowingly presented false claims).  This disagreement regarding the proper imposition of jet fuel surcharges raises, at best, a possible claim of breach of contract which only the government could, and has chosen not to, assert.

Although "[c]omplaints dismissed under Rule 9(b) are 'almost always' dismissed with leave to amend …," *Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986) (quoting 2A J. Moore & J. Lucas, *Moore's Federal Practice*, ¶ 9.03 at 9–34 (2d ed. 1986)), the decision to allow an amendment rests in the discretion of the court.  Relators have already amended the complaint once to add specific examples of the alleged false claims.  On this motion, the court has determined that the complaint is deficient, not for a lack of specificity but because the alleged fraudulent scheme does not state a claim under the FCA.  Thus, the court fails to see how an amendment would address the shortcomings of the FCA cause of action.  The specifics of the alleged fraudulent scheme are fully included in the complaint and all pertinent contract documents have been incorporated by reference and considered by the court.  No additional detail will transform this contract ambiguity into a fraud claim.  Accordingly, the motion to dismiss

14

SPA-15

is granted and the complaint is dismissed with prejudice.

**2.  Statute of Limitations**

In the interest of thoroughness, the court will address defendants' alternative argument that relators' claims that predate September 9, 2005 must be dismissed as time-barred.  The FCA applies a six-year statute of limitations precluding relator claims filed "more than 6 years after the date on which the violation of [the FCA] is committed." *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263, 267 (2d Cir. 2006) (quoting 31 U.S.C. § 3731(b)(1)).  The FCA's six-year statute of limitations begins to run " 'on the date the claim is made, or, if the claim is paid, on the date of payment.' "  *U.S. ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1157 (2d Cir. 1993) (quoting *Blusal Meats, Inc. v. United States*, 638 F. Supp. 824, 829 (S.D.N.Y. 1986), *aff'd*, 817 F.2d 1007 (2d Cir. 1987)).

This action was commenced on April 18, 2008, with the filing of the complaint under seal (Item 1).  After the government declined to intervene, the relators served an amended complaint on September 9, 2011 (Item 25).  Citing *Baylor, supra*, defendants argue that the amended complaint does not relate back to the date of the filing of the original complaint and that any claims prior to September 9, 2005, six years prior to the date of the filing of the amended complaint, must be dismissed.

In *Baylor,* the court determined that the Government's complaint-in-intervention did not relate back to the original *qui tam* complaint filed under seal.  Section 3731(c) of the FCA was then amended to provide that any pleading by the Government, whether an amendment or a complaint-in-intervention, relates back to the original *qui tam*

15

SPA-16

complaint, to the extent that it arises out of the same conduct, transactions, or occurrences set forth in the original complaint.  31 U.S.C. § 3731(c).  Neither *Baylor* nor section 3731(c) applies to the original *qui tam* complaint in this case.

Here, the case was commenced with the filing of the original complaint in a timely fashion, the Government chose not to intervene, and the original sealed complaint tolled the applicable statute of limitations.  *See Hayes v. Dep't of Educ. of City of New York,* 2014 WL 2048196, *5 (S.D.N.Y. May 16, 2014).  The amended complaint is substantially the same as the original complaint, with some added factual details. Thus, the allegations of the amended complaint are timely, as "no claim actually pleaded in the Amended Complaint would be time-barred, if timely when the original sealed complaint was filed." *Hayes,* 2014 WL 2048196, at *6.  Accordingly, if the court had not dismissed the complaint for failure to plead a plausible claim for relief under the FCA, this aspect of the defendant's motion would be denied.

### CONCLUSION

The defendants' motion to dismiss (Item 36) is granted, and the complaint is dismissed with prejudice.  The Clerk is directed to enter judgment accordingly.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: September 10, 2014

16

SPA-17

AO 450 (Rev. 5/85) Judgment in a Civil Case

# United States District Court

### WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA
ex rel. Kevin Grupp and Robert Moll
      v.

DHL EXPRESS (USA), INC., et al.,

**JUDGMENT IN A CIVIL CASE**
CASE NUMBER: 08-CV-301C

☐ **Jury Verdict**.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

☒ **Decision by Court**.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED: that the defendants' motion to dismiss is Granted

and the complaint is Dismissed with prejudice.

Date: September 12, 2014

MICHAEL J. ROEMER, CLERK

By: s/Suzanne Grunzweig
     Deputy Clerk